Matter of McLaughlin (City of Albany--Commissioner of Labor) (2021 NY Slip Op 06119)





Matter of McLaughlin (City of Albany--Commissioner of Labor)


2021 NY Slip Op 06119


Decided on November 10, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 10, 2021

530641
[*1]In the Matter of the Claim of Stephen McLaughlin, Respondent. City of Albany, Appellant. Commissioner of Labor, Respondent.

Calendar Date:October 15, 2021

Before:Egan Jr., J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Marisa Franchini, Corporation Counsel, Albany (Peachie L. Jones of counsel), for appellant.
Carolyn B. George, Albany, for Stephen McLaughlin, respondent.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.



Aarons, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed July 3, 2019, which ruled, among other things, that the City of Albany was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
In 2010 and 2015, claimant was appointed by the City of Albany's Common Council to serve as a member of the City's Board of Assessment and Review (hereinafter BAR). BAR members served five-year terms and were tasked with reviewing grievances filed by City property owners to determine whether the protested properties had been fairly and accurately assessed. During a typical year, claimant began work on the appointed grievance day (the fourth Tuesday in May), at which point he and his fellow BAR members would review and determine whatever grievances had been filed. Prior to 2016, claimant was paid $3,000 seasonally for such work. In 2016, however, there was a City-wide reassessment, which significantly increased the volume of work that claimant and his fellow BAR members performed. As a result, claimant's compensation — for which he was issued a 1099 form — increased to $10,000 for the 2016 season. Claimant's last day of service during the 2016 season was on June 17, 2016.
Shortly thereafter, claimant filed a claim for unemployment insurance benefits. The Department of Labor allowed the claim, finding that claimant was a City employee and that the City was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated. Following a hearing, an Administrative Law Judge upheld the initial determination, concluding that the City exercised sufficient supervision, direction and control over claimant's activities to establish an employment relationship. The Unemployment Insurance Appeal Board affirmed that decision, prompting this appeal by the City.
"Whether an employer-employee relationship exists is a factual issue for the Board to resolve, and its determination will be upheld if supported by substantial evidence in the record. Although all aspects of the working arrangement are considered in discerning that relationship, the key question is whether the putative employer exercised control over the results produced by the worker or the means used to achieve the results" (Matter of Mayo [Epstein-Commissioner of Labor], 193 AD3d 1199, 1199-1200 [2021] [internal quotation marks, brackets and citations omitted]; see Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d 1190, 1191 [2021]) — "with control over the latter being the more important factor" (Matter of Jordan [Alterna Holdings Corp.-Commissioner of Labor], 187 AD3d 1264, 1265 [2020] [internal quotation marks and citations omitted]; see Matter of Murray [TN Couriers LLC-Commissioner of Labor], 187 AD3d 1270, 1271 [2020]). Importantly, incidental control is insufficient to establish the existence of an employment relationship (see Matter [*2]of Walsh [TaskRabbit Inc.-Commissioner of Labor], 168 AD3d 1323, 1324 [2019]).
Claimant testified that he received training for his position when he was appointed to BAR in 2010 and again when he was reappointed in 2015. Claimant acknowledged, however, and a review of the underlying statutory scheme reveals, that such training is mandated by the state (see RPTL 523 [1] [d]; [2]). The substance of the training course is prescribed by the Commissioner of Taxation and Finance (see RPTL 523 [2] [a]), and the local administration thereof may be delegated to the "county directors of real property tax services" (RPTL 523 [2] [b]). Indeed, claimant testified that the 2015 training session was held in Schenectady County and was attended by colleagues from around the region.
With respect to his specific duties, claimant testified that the 2016 season consisted of two phases.[FN1] During the first phase, claimant and two temporary members of BAR staffed what was described as a satellite office (located at a local American Legion post) where property owners could review the tentative assessments of other properties in order to determine whether their properties had been appropriately assessed.[FN2] According to claimant, he maintained a "rigid 9 to 5 schedule" — as set by the City — during this period. Following grievance day, phase two began, during which time claimant and his fellow BAR members would review and determine the grievances that had been filed. Claimant testified that his schedule during this phase was determined by a consensus of BAR members, although he acknowledged that it was impractical to work outside of the hours that the City Assessor's Office was open for business.
Although claimant provided two examples of instances in which the City Assessor purportedly told claimant how to do his job,[FN3] claimant acknowledged, the City's real property tax consultant testified and a review of the statutory scheme reveals that neither the City Assessor nor any other City entity has control over BAR's review and determination of grievances or the means by which such determinations are reached (see RPTL 523, 525, 526). Rather, the City Assessor merely provides BAR with the necessary property information, and once BAR reaches its determination, the role of the City Assessor is limited to adjusting the tentative assessment roll — as necessary — before the assessment roll is finalized (see RPTL 526 [5]). Notably, although the City Assessor could return a determination to BAR to correct "technical" errors, the City Assessor could not alter or modify the determination reached by BAR (see RPTL 526 [5]). Finally, the record reflects that the City Assessor could neither sanction nor terminate a member of BAR.
Based upon the foregoing, the Board's finding of an employment relationship is not supported by substantial evidence. The existence of BAR itself, as well as claimant's appointment thereto, his subsequent training and his corresponding duties and obligations[*3], are all mandated by statute (see RPTL 523, 525). Although the City — through the City Assessor — selected the location of the satellite office at which claimant initially was based during the 2016 season and provided claimant with the information necessary to assist property owners and resolve any grievances that were filed, it is clear that the City did not exercise any supervisory control over claimant and the other BAR members, nor did the City have the authority to dictate either the outcome of BAR's review of the grievances filed or the intricacies of that deliberative process. Thus, even assuming that the City — through the City Assessor — set claimant's work hours during phase one of the 2016 season and — through the Common Council — established claimant's rate of pay, the record is otherwise devoid of proof of the control required to give rise to an employment relationship during any of the years at issue (see Matter of Chorekchan [New York City Bd. of Elections-Commissioner of Labor], 128 AD3d 1311, 1313 [2015]; Matter of Cool [Ross], 57 AD2d 450, 451 [1977], affd 44 NY2d 750 [1978]). Accordingly, the Board's determination is reversed.
Egan Jr., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: As the City points out in its brief, virtually no proof was adduced as to claimant's hours, schedule, duties and/or interaction with the local assessor's office during the years preceding 2016.

Footnote 2: The satellite location, as well as the extended period during which property owners could review their assessments, were necessitated by the increased volume of property owners seeking redress and the logistical inability of City Hall to accommodate those individuals. According to the City's real property tax consultant, the schedule was "suggested" in order to avoid the "administrative nightmare" that would have resulted from reviewing thousands of grievances in an abbreviated period of time.

Footnote 3: These instances included advising claimant as to the ways in and degree to which BAR members could assist property owners seeking to challenge their assessments and the manner in which BAR members should handle grievances accompanied by an appraisal.